### ELLIS K. POWERS v. EMMA A. TOTTEN.

1. To a foreign attachment, a married woman—her husband having been joined in the writ—caused her separate appearance to the action to be entered, and the cause having gone to trial on the issue thus raised —*Held*, that the judgment was sustainable.
2. The rights of a *feme covert* as a suitor, considered.

Rule to show cause.   On motion for a new trial.

The action was by foreign attachment issued against Emma A. Totten, the above-named defendant, and one John Totten, her husband.    An appearance was entered for Emma A. Totten, by her attorney, and thereupon a declaration was filed, stating that she was attached to answer the plaintiff, and complaining that, on the 20th of April, 1874, at the city of New York, she had made her promissory note of that date, whereby she, together with John Totten, had promised to pay the

plaintiff the sum of $2000, one year after date, &c. There were the common counts, laying debts due from the defendant and the said John Totten. The plea was the general issue, and was put in by the defendant alone.

Argued at June Term, 1880, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and KNAPP.

For the motion, *W. Strong.*

*Contra, John Linn.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. In this case, an attachment was issued against the defendant and her husband, founded on a promissory note made by them, in which the plaintiff was the payee; and the wife having alone entered an appearance to the action, the declaration was put in against her, separately, and upon her plea of the general issue, the cause went to trial. This note was made in New York, and, by the production of the statutes of that state, it was shown at the trial that the contract thus entered into by the defendant was a legal one, although, at the time, she was a *feme covert.* On the assumption, then, of the validity of the contract, the questions raised relate to the regularity of the proceedings.

On the part of the defendant, it is urged that, as the cause of action arose in the year 1874, and was prior to the existing law authorizing a separate suit against a married woman, on her contract, the procedure should have been conformed to the methods of the common law, and that, as a consequence, the present verdict cannot be sustained, being founded on an issue taken by a married woman, in the absence of her husband from the record.

In looking for the rules regulating the remedy in this case, although the legality of the contract is dependent on the legal enactment of a foreign jurisdiction, it is the law of this state that is alone to be regarded. Matters of procedure are

the creatures of domestic regulation. No question, therefore, can be made with respect to the proper mode of proceeding for the enforcement of the contract which underlies the present action. There is no statute in this state that authorizes a suit at law against a married woman, without her husband being joined as a party, except upon contracts entered into by her since the passage of the present act relative to married women, which went into effect on the 1st of January, 1875. This was the express announcement of this court in the case of *Wilson* v. *Herbert,* 12 *Vroom* 455. It would have been irregular, therefore, to have sued upon the note now in controversy, in the courts of this state, without the joinder of both husband and wife as parties defendant.

But this principle does not have the reach necessary for the purposes of this defence. The husband, as well as the wife, was a party to this action ; the attachment went against the two ; and the result is, that the counsel of the defendant must satisfy the court, in order to sustain his position in any degree, that it was illegal for the wife to have her single appearance entered, and to plead to the issue in her own name. The inquiry is then, she and her husband being parties to the writ of attachment, what is there in legal principles to prevent the wife from entering her appearance to the action, and contesting the issue raised by herself, in the same manner as though she were a *feme sole?* Suppose, on the return of this writ of attachment served on the property of the wife, the husband should refuse to enter an appearance, what, in such a juncture, would be the wife's remedy? It seems to me the inevitable answer is, that as the statutes have empowered a married woman to bind herself by contracts, on which an action at law will lie against herself, as well as against her husband, and in the progress of which action, if a judgment be obtained, her separate property becomes subject to it, she has conferred upon her, by necessary implication, every ability requisite for the defence of her rights.

We cannot suppose that it was the legislative intent, when increasing the capacities of the married woman, to leave her

well nigh defenceless against suits growing out of her own contracts. In such situations, I cannot think that her protection is dependent solely on the caprice of her husband. In an action on an engagement entered into by a *feme covert* prior to the passage of the act now in force relative to married women, I can have no doubt that, while the summons should have been issued against the husband as well as the wife, that if the former should have refused, or should have neglected to enter an appearance, the latter would have been permitted to defend such action in her own name, independently of her husband. The inabilities of the wife as a suitor depended, at common law, in a large measure, on her inability to act, in other respects, for herself. Her separate existence in court was not to be recognized, because she had no separate existence out of court. Her property passed into the hands of her husband, and her coverture prevented her from incurring legal obligations. Under such circumstances, there was no necessity for her possessing a separate standing in court. But the act of 1862 changed this situation in all material respects. The married woman, under its terms, retained, and could acquire property, and could impose legal obligations upon herself. It would seem, therefore, that as the grounds of the old practice touching the litigious rights of this class of persons, have been removed, the practice itself must be considered to be removed. As a further illustration of the unwisdom of applying the former mode of procedure to existing affairs, it is said, in the argument of counsel of the defendant—and cases in point are cited to sustain the position—that the appearance of the defendant by attorney was void, as a married woman could not appoint an attorney. Undoubtedly, this is the common law rule, but how can such a rule be applied, when, by force of the statutes of this state, this defendant had as complete a right, when she employed her attorney—the present act being then in force—to bind herself by any personal engagement, except such as relate to suretyship, as though she had never come under coverture?

There are few cases to which the axiom, "*cessante ratione, cessat ipsa lex*," would seem more closely to apply.

But the foregoing inquiry, in this general form, although introduced in the argument of counsel, is not directly embraced in the case which is before the court for adjudication. The question now to be answered is a narrower one, for here, the wife had appeared and pleaded, and the case went before the jury on the issue thus joined. Upon the fact of the defendant's coverture being disclosed incidentally, in the progress of the trial, the counsel for the defendant claimed a non-suit, on an instruction to the jury to find against the suit. But what pretence, even upon the most technical rules of the common law, is there for such a contention? The fact of coverture did not appear in the pleadings, was not within the issue, and consequently could not be tried. Even beyond this, as the coverture did not destroy the capacity of the defendant to bind herself by the note in suit, such coverture was not a bar to the action, and therefore could neither be so pleaded nor be set up as such at the trial. The defect, if it existed as claimed, was one merely of form, and was consequently matter that could be insisted on only by way of a plea in abatement. At that stage of the cause, the judge was plainly right in refusing to listen to the objection.

Let the rule be discharged.